In re FOUR SEASONS SECURITIES
LAWS LITIGATION.

ARTHUR ANDERSEN & CO.,
Appellant,

v.

BANK OF AMERICA, Trustee of Transport Indemnity Company and Transport Underwriters Association Employee Profit Sharing and Retirement Plan PS–13901, Appellee.

No. 73–1579.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 22, 1974.

Decided Feb. 20, 1974.

William G. Paul and Harry A. Woods, Jr., of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl. (Charles W. Boand and George W. Thompson of Wilson & McIlvaine, Chicago, Ill., of counsel, on the brief), for appellant.

Clarence S. Hunt of Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., for appellee.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The sole question presented in the above appeal is whether the District Court correctly ruled that the Bank of America, appellee here, had effectively opted out as a member of the plaintiff class in a class action brought pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The trial court in a memorandum and order held that the Bank effectively elected to remove itself from the class and that it was not entitled to share in the settlement which had been arranged on behalf of the class and was not bound by the provisions of the judgment entered therein.

The result of a determination that the District Court ruled correctly would be that the Bank could pursue potential individual claims in private litigation involving securities transactions having to do with Four Seasons Nursing Centers securities.

The Bank of America is trustee for the Transport Indemnity Company and Transport Underwriters Association Employee Profit Sharing and Retirement Plan. The Plan had purchased securities in Four Seasons on the basis of advice given by certain investment counselors. Later, of course, the Four Seasons operation became involved in widespread litigation including a Chapter X proceeding under the Bankruptcy Act.

There were several individual and class actions instituted on losses suffered in the purchase of Four Seasons stock. In November 1971, the members of the Plan, of which appellee Bank is trustee, filed suit in California against their investment counselors claiming damages arising out of advice given in purchasing Four Seasons securities.[1]

The numerous actions having to do with Four Seasons in the federal courts were brought together by the Judicial Panel on Multidistrict Litigation, and on September 27, 1972, the Bank of America was designated as one of the members of plaintiff class in an action which was tried in the Western District of Oklahoma.

The September 27, 1972 order also approved the settlement arrangement reached between representatives of the classes and the defendant. Following this, a notice was sent out to the known members of the classes and it was published in the national Wall Street Journal. The Bank of America received the notice on October 10, 1972. It provided that members of each class wishing to be excluded were required to file a written request with the clerk of the court by November 1, 1972. The notice explained that the effect of the failure to request exclusion would be that the class members in not requesting it would be bound by any judgment of the court entered in the action. The notice also told the members that if they did not elect to opt out they had to file a proof of claim before January 3, 1973. This proof of claim form contained a general release of all potential claims arising out of the Four Seasons matter.

The letter relied on by appellee Bank of America as evidencing its request to opt out was dated October 23, 1972 and addressed to the Trustee for Four Seasons. (It is set forth as an appendix).

---

1. Appellant Arthur Andersen & Co. was not one of the named defendants in the Plan's California state action. Arthur Andersen's connection with that suit apparently stems from the possibility that those defendants might institute third party liability or indemnity actions jeopardizing Arthur Andersen.

In this letter the Bank expressed concern as to whether it could participate in the class recovery as a member of a class and also retain its cause of action which was already filed in the California state court. Copies of this letter to the Trustee were also sent to counsel for both plaintiffs and defendants.

The Trustee did not respond to the Bank's inquiry, but forwarded its letter to one of plaintiffs' attorneys here. A Mr. Young, one of the counsel for plaintiffs, wrote a letter to the Bank dated October 27, 1972, stating that he did not believe that the Bank's proof of claim form could be modified so as to accord with the wishes of the Bank. On the same date the Bank received a telephone call from another of plaintiffs' counsel indicating that the form submitted could not be modified. On November 2 counsel for the appellee wrote to the court-appointed Trustee requesting a form for exclusion from the class. On November 15 the Bank sent a purported proof of claim form which was modified to allow it to pursue its claim in the California state court. This also said that if the form as modified was not accepted, the Bank would regard itself as having opted out of the class. The court on entering its judgment on November 30, 1972, reserved authority to decide whether the Bank had opted out of the class. Following the Bank's motion on December 26, 1972 that the court either accept the modified proof of claim or treat the Bank as having opted out, the court ruled as indicated above.

On this appeal the appellant argues that the trial court's findings as to the intent of the Bank and knowledge of plaintiffs' counsel were clearly erroneous under Rule 52(a). They also assert that the trial court erred in determining that the Bank's failure to make a timely request for exclusion constituted excusable neglect.

## I.

Appellant's argument proceeds in the following manner:

That the Bank received notice on October 10, 1972, but did not respond until October 23, and on November 1, 1972, the last day for filing their request, one of the Bank's trust officers talked to one of the counsel for plaintiffs in the class action on the telephone. Both that call and another call from counsel advised the Bank that the modification was not possible. Notwithstanding this, the Bank failed to file a specific request for exclusion by November 1, 1972. This, it is contended, cannot be considered excusable neglect but, rather, a failure to make a decision. We disagree.

The Bank points out that its letter which is appended hereto is to be read as an election to be excluded unless it could pursue the claim and also continue the litigation. At most it says that it was not a deliberate attempt to delay or avoid the election but merely a mistake resulting from belated responses to its inquiry. In deciding this issue the trial court emphasized that counsel for the class plaintiffs knew that it was prior to the effective date that the Bank intended to opt out if it could not file a modified release. The failure to respond to the Bank's inquiry delayed the formal action by the Bank. Based upon this finding, the trial court ruled that the Bank was to be regarded as having filed a timely election to opt out.

■■ The trial court cited Rule 6(b)(2) as having allowed enlargement of time even after the effective date where the failure to act was the result of excusable neglect. We recognize that a finding of excusable neglect under Rule 6(b)(2) requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period.[2] The facts support a finding of good faith on the part of the Bank. There is no indication that the tardiness was part of a strategy designed to gain a tactical advantage. The Bank was merely seeking to clarify its own position. Moreover,

2. *See* 4 Wright and Miller, Federal Practice and Procedure § 1165 (1969) and the cases cited therein.

there was no prejudice suffered from the enlargement of time.[3] Allowing the Bank to opt out did not deplete the sum reserved for outside claims. Inasmuch as there was no showing of bad faith or prejudice to the appellant, the trial court's ruling enlarging the time under Rule 6(b)(2) was not erroneous.[4]

## II.

■ Nor do we consider the trial court's ruling concerning the effectiveness of the notice of appellee Bank requesting to be excluded as erroneous. It was open to the trial court to find the facts on this and to determine the issue in accordance with the purpose of Rule 23(c)(2), which provides for the binding effect of a judgment on members of a class who have not expressly requested exclusion. The origin of this was to eliminate the practice of waiting to see if the adjudication was favorable to the class before deciding whether to enter it. This is not our situation. 7A Wright and Miller, Federal Practice and Procedure § 1787 (1972), p. 156 states:

Rule 23(c)(2) does not specify how the absentee is to request exclusion. It certainly would be an undue burden on class members to require them to retain counsel and prepare a formal legal document; on the other hand, allowing too much informality might pose problems of authenticity and ambiguity. Nonetheless, considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice. For example, in Bonner v. Texas City Independent School District of Texas, the court held that the testimony of three teachers at trial that they did not desire to become associated with plaintiff's action to compel the school district to offer teaching contracts was sufficient to constitute a request to be excluded from the action under Rule 23(c)(2)(A). To minimize uncertainty, the notice should inform the recipient exactly how to express his desire to opt-out, to whom it should be directed, and the date by which it must be received. See also Bonner v. Texas City Independent School Dist. of Texas, 305 F.Supp. 600 (S.D.Texas 1969).

Counsel for appellant would have us lay down a rule that in order to opt out the request must be explicit. The trial court here ruled that the important question was whether notice was communicated. We consider this to be the correct judicial approach to the problem, since we are not construing a will, a deed or a contract. A reasonable indication of a desire to opt out ought to be sufficient. Here the Bank's inquiries and expressions of its wish were adequate. As the authors of the treatise cited above indicate, flexibility is desirable in determining what constitutes an expression of a class member's desire to exclude himself and any written evidence of it ought to be sufficient.

## III.

■ We disagree with the final contention of appellant that the trial court made erroneous findings of fact. They maintain that the court was wrong in finding that plaintiffs' counsel knew before the expiration date that the Bank wished to opt out; that it could not use a modified release; and that plaintiffs' counsel failed to respond categorically to inquiries sent by counsel for appellee.

---

3. See Coady v. Aguadilla Terminal Inc., 456 F.2d 677 (1st Cir. 1972) ; Vandervelde v. Put and Call Brokers and Dealers Ass'n, Inc., 43 F.R.D. 14 (D.C.N.Y.1967).

4. Supermarkets General Corp. v. Grinnell Corp., 59 F.R.D. 512 (S.D.N.Y.1973) is not dispositive of the case at bar. There, the movant under Rule 6(b)(2) did not have a rational basis for its failure to make a timely request for exclusion and neither made inquiries nor asserted its intentions prior to the expiration date.

We cannot say that the findings of the trial court were clearly erroneous.

The order and judgment of the trial court is affirmed.

## APPENDIX

LAW OFFICES

## Ball; Hunt, Hart, Brown and Baerwitz

120 LINDEN AVENUE

LONG BEACH, CALIFORNIA 90801

(213) 435-5631

BEVERLY HILLS OFFICE
450 NORTH ROXBURY DRIVE
BEVERLY HILLS, CALIFORNIA 90210
(213) 278-1960

October 23, 1972

PLEASE DIRECT REPLY TO:

P. O. Box 1287
Long Beach, CA. 9086

Mr. James R. Tolbert III, Trustee
P. O. Box 26968
Oklahoma City, Oklahoma       73126

Re:       Four Seasons Nursing Centers of America, Inc.
          et al., United States District Court For The
          Western District of Oklahoma, M.D.L. Docket
          No. 55 All Cases; Proceedings for the Reorgan-
          ization of Corporations; Settlement of Certain
          Class Actions; Claim of Bank of America,
          Trustee of Transport Indemnity Company and
          Transport Underwriters' Association Profit
          Sharing and Retirement Plan.

Dear Mr. Tolbert:

Under date of May 18, 1972, Bank of America, through its
trust officer, J. E. Morrison, forwarded by mail a Class
"G" Creditor Proof of Claim form covering 4,000 shares of
Four Seasons Nursing Centers of America, Inc. common stock.
A copy of the Proof of Claim as forwarded is enclosed here-
with as Exhibit "A".

Bank of America, as trustee, has received Notice to Persons,
etc., from the United States District Court for the Western
District of Oklahoma in re Four Seasons Securities Laws lit-
igation M.D.L. Docket 55, All Cases, relative to the proposed
settlement of certain class actions against Four Seasons
Nursing Centers of America, Inc. and other companies referred
to collectively as "Four Seasons Companies", enclosing a form
of proof of claim described as "Proof of Claim Form A" with
instructions for the filing of said claim, upon election to
do so, by any class "G" creditor. A copy of this Proof of
Claim Form A is enclosed herewith as Exhibit "B".

On October 7, 1971, Transport Indemnity Company and others
filed an action on behalf of the "Employee Profit Sharing
and Retirement Plan" of Transport Indemnity Company and Trans-
port Underwriters' Association against Financial Trust Company

and Financial Programs, Inc. et al. in the Superior Court, State of California, for the County of Los Angeles, No. C 13659, said action being an action for damages against defendants in connection with their purchase on behalf of the Employee Profit Sharing & Retirement Plan of certain common stocks, including common stock of Four Seasons Nursing Centers, Inc., said purchases being the basis of the Class "G" Creditors Claim (Exhibit "A" attached to this letter). In reviewing the Proof of Claim Form A (Exhibit "B" attached to this letter), it is noticed that the release clause is all inclusive and so broad as to probably include all persons in any way having performed any acts or omissions relative to the Four Seasons Company. Bank of America, as trustee, is desirous of participating as one of the class of persons upon whose behalf certain class actions have been filed as referred to in the Notice relative to the settlement of certain class actions. However, Bank of America, as trustee, and the plaintiffs in said action, filed in the State Court of California, are fearful that the presentation of the Proof of Claim Form A may be construed to constitute a bar against any further proceedings in the State Court action.

On behalf of the Bank of America and Transport Indemnity and other plaintiffs re the Employee Profit Sharing and Retirement Plan, I request you advise as to whether the "Proof of Claim Form A", insofar as the release clause is concerned may be modified so as to clearly exclude from any release provisions the defendants in the State action, and if so, whether this may be done by interlineation on the Proof of Claim Form A.

I request you give this your prompt and early consideration and advise.

Very truly yours,

BALL, HUNT, HART, BROWN AND
BAERWITZ

Clarence S. Hunt

CSH:mo

Enclosures

cc: Messrs. Thomas W. Kelly, Esq., Charles W. Boand, Esq., Arthur F. Mathews, Esq., Marvin Cherner, Esq., Ira Jay Sands, Esq. and Robert B. Levin, Esq., J. Vernon Patrick, Esq., Harry A. Young, Jr., Esq., Robert C. Bailey, Esq. Eldon R. Clawson, Neville Duvall, William Sundahl