ALIPIO BAGALAY, an incompetent person, by his Guardian, BEATRICE BEDOYA, Plaintiff-Appellant, *v.* THE LAHAINA RESTORATION FOUNDATION, COUNTY OF MAUI, and STATE OF HAWAII, Defendants-Appellees

NO. 6199

DECEMBER 15, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, AND MENOR, JJ., AND CIRCUIT JUDGE FUKUSHIMA IN PLACE OF KIDWELL, J., DISQUALIFIED

126

OPINION OF THE COURT BY KOBAYASHI, J.

Alipio Bagalay, an incompetent person, by his guardian, Beatrice Bedoya (appellant), appeals from an order of the Circuit Court of the Second Circuit dismissing appellant's complaint for failure to file a proper statement of readiness in violation of Rule 12(f), Rules of the Circuit Courts, and for failure to make a timely substitution of parties in violation of Rule 25(a)(1). Hawaii Rules of Civil Procedure (H.R.C.P.). We reverse.

### ISSUES

I.   Whether the trial court erred in dismissing appellant's complaint on the ground that appellant repeatedly violated Rule 12(f).

II.   Whether the trial court erred in dismissing appellant's complaint on the ground that appellant's motion for substitution of parties under Rule 25(a)(1), H.R.C.P., was untimely.

### STATEMENT OF THE CASE

On December 25, 1969, a structure in which appellant was standing collapsed on him and caused him serious injuries. On July 15, 1970, after appellant had been adjudged as an incompetent person, Beatrice Bedoya was duly appointed by the circuit court of the second circuit as the guardian of the person and property of appellant. Thereafter, on October 1, 1971, the guardian, on behalf of appellant, filed a complaint in

the second circuit court against the appellees for damages for injuries sustained by appellant. On November 7, 1972, while the suit was pending, appellant died.

Defendant State of Hawaii filed its answer on October 20, 1971; Defendant Lahaina Restoration Foundation filed its answer on October 28, 1971, and Defendant County of Maui filed its answer on November 3, 1972. On February 4, 1972 and February 9, 1972, the State and the County, respectively, moved for summary judgment or dismissal pursuant to Rule 56, H.R.C.P., or in the alternative, Rule 12, H.R.C.P. The court denied both motions. After the parties participated in discovery proceedings, the County, on June 6, 1973, again moved for summary judgment or dismissal under Rule 56 and Rule 12, H.R.C.P. The court entered its denial of the motion on July 2, 1973.

On August 30, 1973, the clerk of the court filed and served on all parties a notice of dismissal pursuant to Rule 12(f), Rules of the Circuit Courts.[1] On September 7, 1973, counsel for appellant filed a timely motion for an extension of time to file a statement of readiness. Counsel's affidavit which was filed with the motion, stated the following:

1. That he [counsel for appellant] is an attorney duly licensed to practice in the State of Hawaii;

2. That he represents [appellant] who died on November 7, 1972, subsequent to the filing of this action;

3. That after [appellant's] death he tried to locate said [appellant's] heirs;

4. That in December 1972, he contacted a Mrs. Fortunata Bagalay Dequito in the Philippines who claims to

---

[1] Rule 12(f), Rules of the Circuit Courts, provides:

Where no statement of readiness had been filed within one year after a complaint has been filed or within any extension granted by the court, the clerk shall notify in writing all parties affected thereby that the case will be dismissed for want of prosecution unless objections are filed within 10 days after receipt of such notice. If objections are not filed within said 10-day period or any extension granted by the court, the case shall stand dismissed with prejudice without the necessity of an order of dismissal being entered therein. Where objections are filed within said 10-day period or any extension granted by the court, the court shall hear said objections upon notice and determine whether the case should be dismissed.

be the daughter of the deceased [appellant];

5. That he has been attempting to determine the validity of her claim as heir and the claims of her mother and other relatives in the Philippines;

6. That he has not been able to obtain any authority from any heir to proceed on behalf of the deceased [appellant] in this case and will need at least another six months to validate the claims of the alleged relatives and obtain such authority;

7. That once such authority is received, the case would be practically ready for setting on the trial calendar.

The court approved the motion and extended the time of filing a statement of readiness to February 28, 1974.

The record shows that appellant did not file a statement of readiness as of February 28, 1974. On March 6, 1975, approximately a year after the February 28th time limitation had expired, Lahaina Restoration Foundation and the State of Hawaii filed a motion for an order directing the clerk to issue notice of a second conditional dismissal pursuant to Rule 12(f), Rules of the Circuit Courts. On April 29, 1975, the court held a hearing on the defendants' motion. Appellant's counsel appeared, objected to the granting of the motion, and stated the following reason for the delay in filing of the statement of readiness:

[T]he reason for the delay in this case is most unusual, your Honor, because the plaintiff died. And the only heirs we were able to find were in the Philippines. And we have been unable to proceed because there has been a lack of communication between the heirs in the Philippines and our law firm. . . . Mrs. Dequito has come to Hawaii in an attempt to resolve this lack of communication and allow us to proceed as expeditiously as possible.

Counsel for appellant asked for an extension of time until July 1, 1975, in order to find appellant's witnesses and to recontact them regarding the case. The said defendants (appellees) objected to the extension of time for filing because the "ab-

sence of witnesses and the long length of time between the filing of Complaint and the filing of a Statement of Readiness" had prejudiced their case.

On May 7, 1975, the court filed an order of conditional dismissal, dismissing the complaint with prejudice, "on condition that plaintiff fails to file a statement of readiness by and including May 31, 1975." On May 30, 1975, counsel for appellant filed a statement of readiness. On July 1, 1975, counsel for appellant filed a motion to substitute temporary administratrix, Beatrice Bedoya, as party plaintiff for appellant pursuant to Rule 25(a)(1). H.R.C.P.[2] On the same day, counsel for appellant filed a "Suggestion of Death upon the Record Under Rule 25(a)(1), Hawaii Rules of Civil Procedure", and served the "Suggestion of Death" with a notice of hearing upon counsel for appellees. The court held a hearing on August 5, 1975 and November 18, 1975, on the motion for substitution. On February 3, 1976, the court entered its order dismissing the complaint on the following two separate and independent grounds:

## A. *Violations of Rule 12(f)*

The Court finds that the complaint herein was filed on October 1, 1971. A statement of readiness was not filed within one year from the date of the filing of the complaint as required by Rule 12(f), Rules of the Circuit Courts. On September 1, 1973, the Clerk filed a Notice of Dismissal Within 10 Days pursuant to Rule 12(f). On September 6, plaintiff moved *ex parte* to extend the time in which to file a statement of readiness for six months, which was

---

[2] Rule 25(a)(1), H.R.C.P., provides as follows:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons. Unless the motion for substitution is made not later than 180 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

granted by the Court by order dated September 7, 1973. Plaintiff failed to file a statement of readiness within the extension granted, more than two years after the filing of the complaint.

On March 6, 1975, LRF [Lahaina Restoration Foundation] and the State moved the Court for an order directing the Clerk to file a second notice of dismissal. This Court ordered a dismissal of the complaint unless plaintiff filed an appropriate statement of readiness on or before May 31, 1975. While plaintiff did file a document purporting to be a statement of readiness on May 30, 1975, it was not really a statement of readiness in that the necessary substitution of party for the deceased had not been undertaken. Accordingly, the statement of readiness dated May 30, 1975, is stricken from the records of this case and the Court exercises its discretion to order that the complaint be and hereby is dismissed under Rule 12(f), Rules of the Circuit Courts.

## B. *Violation of Rule 25(a)(1), H.R.C.P.*

The Court finds that Mrs. Bedoya, guardian *ad litem* for Mr. Bagalay, through her counsel's affidavit dated September 6, 1973, suggested the fact of Mr. Bagalay's death upon the record, and said affidavit was duly served upon attorneys for LRF, the State, and the County. The motion for substitution of Mrs. Bedoya as Temporary Administrator of Mr. Bagalay's Estate was not filed until June 27, 1975 and, therefore, is untimely under Rule 25(a)(1), H.R.C.P. Ordinarily, this Court would exercise its discretion to grant plaintiff an extension of time in which to file such a motion upon a showing of excusable neglect. But the record in this case is one of inexcusable delay and lack of prosecution of the claim. Thus, it is ordered upon this second and independent ground that the complaint be and hereby is dismissed.

I. WHETHER THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S COMPAINT ON THE GROUND THAT APPELLANT REPEATEDLY VIOLATED RULE 12(f).

The circuit court concluded that appellant's statement of readiness "was not really a statement of readiness" because appellant had not substituted the proper party for the appellant prior to filing such a statement. The question to be resolved is whether, under the facts of this case, appellant's failure to make timely substitution of parties prior to filing a statement of readiness warranted the court's dismissal of the complaint.

A dismissal under Rule 12(f) is essentially a dismissal for want of prosecution. *Kudlich v. Ciciarelli,* 48 Haw. 290, 401 P.2d 449 (1965). Since this jurisdiction lacks an analysis of Rule 12(f), we deem it instructive to examine the case law regarding the factors to be taken into consideration in the trial court's exercise of its discretion to dismiss a case for want of prosecution pursuant to Rule 41(b), H.R.C.P.[3]

In general, the federal appellate courts have said that a dismissal of a complaint is such a severe sanction that it is to be used only in extreme circumstances when there is a "clear record of delay or contumacious conduct . . . and where lesser sanctions would not serve the best interests of justice." *Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210, 212 (5th Cir. 1976). *Navarro v. Chief of Police, Des Moines, Iowa,* 523 F.2d 214 (8th Cir. 1975); *Bush v. United States Postal Service,* 496 F.2d 42 (4th Cir. 1974); *Hassenflu v. Pyke,* 491 F.2d 1094 (5th Cir. 1974); *Edsall v. Penn Central Transportation Company,* 479 F.2d 33 (6th Cir. 1973). Courts have read

_____

[3] Rule 41(b), H.R.C.P., and its federal counterpart, Rule 41(b), F.R.C.P., provides in relevant part:

(b) *Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him. . . .

Rule 41(b), F.R.C.P., has been construed to permit the court, sua sponte, after notice to the parties, to dismiss a complaint for lack of prosecution. Link v. Wabash Railroad Co., 370 U.S. 626 (1962). The interpretation of the counterpart in the federal rules are highly persuasive upon this court in the construction of our rules. Ellis v. Crockett, 51 Haw. 45, 61 451 P.2d 814, 824 (1969).

Rule 41(b), F.R.C.P. to require prosecution with "reasonable diligence" in order for a plaintiff to avoid dismissal. *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). Furthermore, where delay results in actual prejudice to the defendants, and where it is shown that plaintiff's counsel deliberately delayed in prosecuting the case, a dismissal would not constitute an abuse of discretion. *Anderson v. Air West, Inc., supra; Pearson v. Dennison*, 353 F.2d 24 (9th Cir. 1965). "The law presumes injury from unreasonable delay. However, this presumption of prejudice is a rebuttable one and if there is a showing that no actual prejudice occurred, that factor should be considered when determining whether the trial court exercised sound discretion." (Citations omitted.) *Anderson v. Air West, Inc., supra* at 524.

Some courts have held that the trial court abused its discretion in dismissing a complaint where the facts showed that counsel for the plaintiff was responsible for the delay, that the plaintiff had no knowledge nor participated in causing the delay, and that lesser sanctions could have been imposed on counsel in lieu of the harsh sanction of dismissal. *Hassenflu v. Pyke, supra; Bush v. United States Postal Service, supra; Reizakis v. Loy*, 490 F.2d 1132 (4th Cir. 1974); *Edsall v. Penn Central Transportation Company, supra. But cf. Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962).

As a final factor, some courts have balanced the sound public policy of deciding cases on their merits against the court's power to prevent delays, *Reizakis v. Loy, supra* at 1135, and against the probability of prejudice to the defendant, *Pearson v. Dennison, supra* at 28. In the case of *Edsall v. Penn Central Transportation Co., supra,* the court ruled that, although the facts of the case showed that the plaintiff's counsel could have taken steps to ameliorate the situation which resulted in a delay of trial, in balancing the equities, the interests of justice demanded that the plaintiff be given another chance to conform his conduct to the court's order. *See International Association of Heat and Frost Insulators and Asbestos Workers, Local 66, AFL-CIO v. Leona Lee Insulation and Specialties, Inc.*, 516 F.2d 504 (5th Cir. 1975).

In the final analysis, the court's decision to exercise its discretion to dismiss a complaint turns on the facts of each case. *Navarro v. Chief of Police, Des Moines, Iowa, supra; Reizakis v. Loy, supra* at 1135. In the case of *You Dong Men v. Ai,* 41 Haw. 574 (1957), the court affirmed the dismissal of the complaint by the trial court pursuant to Rule 41(b), H.R.C.P., when the plaintiff took no steps to have the case set for trial between the filing of the complaint on June 22, 1942, and the death of the petitioner on February 24, 1948, some five years later. In that case, it wasn't until November 16, 1954, that the *respondent* filed a suggestion of death and moved for a substitution of the widow and children of the petitioner as party-plaintiffs. On December 27, 1954, the respondent filed a motion for involuntary dismissal, and the court dismissed the complaint for failure to prosecute and for laches.

The facts of the instant case show a period of about three years and seven months from the filing of the complaint in October, 1971, to the filing of the statement of readiness in May, 1975. Until the time of appellant's death in November, 1972, the record shows that the case proceeded as expeditiously as possible. Problems arose when, after the death of appellant, counsel for appellant, B. Martin Luna, attempted to search for potential heirs to the estate of appellant in the Philippines in order to "validate the claims of the alleged relatives" and to obtain authority to proceed with the case. Appellant had left a will, admittedly drafted by Mr. Luna's law firm,[4] and the will named Beatrice Bedoya as sole heir and executrix to appellant's estate. For the purposes of pursuing the present case, we can see no reason why counsel Luna did not promptly apply for a probate of the will and have Beatrice Bedoya designated as executrix and legal representative of appellant. There is nothing in the record which

---

[4] A copy of a will, purportedly that of appellant, and dated February 7, 1970, was attached as an appendix to appellee Lahaina Restoration Foundation's answering brief. Although the will was not made part of the record in the court below, and is not a part of the record on appeal, in oral argument, counsel Luna admitted that his law firm drafted the 1970 will. Although the general rule is that the court may not consider facts not established by the record, if in oral argument, counsel concedes certain facts, these concessions may be considered by this court. Erie Indemnity Co. v. Coal Operators Casualty Co., 441 Pa. 261, 265, 272 A.2d 465, 467, n.6 (1971).

explains the delay in probating appellant's will, other than counsel's attempted search for heirs. The record shows that it was not until 1975 that Beatrice Bedoya came forward, having been appointed as temporary administratrix of appellant's estate, and sought substitution as a party-plaintiff.

Counsel for appellant asserts that he had no authority to proceed with the suit upon the death of appellant. Appellees assert that, as guardian *ad litem* of the appellant, Beatrice Bedoya had independent authority, based on her position as guardian *ad litem,* and as the named executrix and sole heir and beneficiary of appellant's estate, to petition herself to be made party-plaintiff in this action. Appellees cite no authority for this assertion.

The common law principle is that if a party dies before a verdict or decision is rendered, the action abates as to him and must be dismissed unless it is revived by substitution of a personal representative. *LesCarbeau v. Rodrigues,* 109 R.I. 407, 411, 286 A.2d 246, 248 (1972); *In re Estate of Einstoss,* 26 N.Y.2d 181, 257 N.E.2d 637, 309 N.Y.S.2d 184 (1970). A deceased person cannot be a party to a legal proceeding, and the effect of death is to suspend the action as to the decedent until his legal representative is substituted as a party. *Fuller v. Booth,* 118 Ga.App. 685, 165 S.E.2d 318 (1968); *Sirmans v. Bank,* 217 Ga. 64, 121 S.E.2d 137 (1961). As a general rule, the authority of counsel to proceed with a case is terminated upon the death of the party being represented, *Brown v. Roberts,* 205 N.W.2d 746 (Iowa 1973); *Turner v. Minasian,* 358 Mass. 425, 265 N.E.2d 371 (1970); *Basman v. Frank,* 250 S.W.2d 989 (Mo. 1952); but the courts can pass upon questions raised and listen to suggestions as to their disposal from an attorney who is an officer of the court. *LesCarbeau v. Rodrigues, supra* at 247.

Under the provisions of HRS § 663-7,[5] appellant's cause of

---

[5] HRS § 663-7 (1955) (current version at HRS § 663-7 (1972), effective July 1, 1973), provided:

*Survival of actions.* A cause of action arising out of a wrongful act, neglect, or default, except actions for defamation and malicious prosecution, shall not abate by reason of the death of the injured person. The action shall survive in favor of

action was not extinguished by his death, but survived in favor of his "legal representative." As such, only the legal representative was authorized to continue the suit.

In *Carter v. Davis*, 18 Haw. 439 (1907), the court construed the term "legal representative" within the context of a trust deed to mean "heirs" as well as executors and administrators of the estate. In the context of survival statutes similar to that of HRS § 663-7, one court has construed the term to include heirs-at-law, regardless of the fact that the heir had not qualified as an administrator of the decedent's estate. *Strother v. District of Columbia*, 372 A.2d 1291 (D.C. 1977). Other courts have held that the term refers only to executors and administrators who have been appointed either by law or by will. *Hill v. James*, 175 So.2d 176 (Miss. 1965); *State v. Hollenbeck*, 394 S.W.2d 82 (Mo. 1965).

It is not necessary, in this case, to decide whether the term "legal representative" includes heirs at law and would justify the appellant's counsel's search for heirs of the estate. The will of appellant clearly stated that Beatrice Bedoya was to be the executrix of the estate, and as such, she would have been the proper party to be substituted for appellant. Counsel for appellant was remiss in not promptly seeking to have Ms. Bedoya substituted as a party.

However, we do not agree with appellees that Ms. Bedoya had independent authority based on her position as guardian *ad litem* to move to be substituted as the party plaintiff.

First, the record shows that Ms. Bedoya was appointed as a guardian of the person and property of appellant, and not as his guardian *ad litem* to prosecute this case. "[T]he common law principle is that the guardian's trust expires at the death of the ward, and that upon the happening of that event, it is the duty of the guardian to account for and turn over to the proper heirs so much of the ward's estate as remains in his hands." *In re Guardianship of Mayou*, 6 Wash. App. 345, 347, 492 P.2d 1047, 1949 (1972). *See In re Estate of Taylor*, 114 R.I. 562, 337 A.2d 236, 240 (1975); *Gordon v. Followell*,

---

the legal representative of the person and any damage recovered shall form part of the estate of the deceased.

391 P.2d 242 (Okla. 1964); *In re Damon's Guardianship,* 238 Iowa 570, 28 N.W.2d 48 (1947). Where there is no substitution of parties for a deceased incompetent ward, a judgment in favor of the deceased is a nullity. *Howard v. Hollins,* 462 S.W.2d 765, 766 (Mo. 1971). *Contra, Kern v. Kern,* 261 Cal. App.2d 325, 67 Cal.Rptr. 802 (1968), where the court held that failure to substitute the decendent's executor or administrator prior to entry of judgment was a mere irregularity not warranting a reversal in the case. In *State v. Hollenbeck, supra,* the court held that a guardian of an incompetent person was not a "legal representative" within the meaning of the Missouri survival statute,[6] and that upon the ward's death, the guardian was without further power except to settle the ward's accounts and to deliver the estate and the effects of the ward to the ward's personal representative. *See* 60 A.L.R.2d 963.

Despite the fact that counsel Luna had no authority to proceed with the case until the legal representative of decedent had been properly substituted as a party plaintiff, Mr. Luna continued to prosecute the case, and neither the court below nor the appellees objected. When appellee County of Maui filed a motion for summary judgment and dismissal on June 6, 1973, Mr. Luna responded and filed objections thereto. Furthermore, when the trial court filed its August 30, 1973, notice of dismissal pursuant to Rule 12(f), Mr. Luna promptly filed a motion for extension of time for the filing of a statement of readiness, stating his reasons in an affidavit. Mr. Luna notified the court and the parties of appellant's death at this time, ten months after the death occurred.

It is true that a year after the filing of the complaint, no statement of readiness was filed. However, Rule 12(f) places the responsibility for filing of a notice of dismissal upon the clerk of the court, and not the appellant. Subsequent to the

---

[6] The Missouri survival statute provided, in part, that "causes of action for personal injuries . . . shall not abate . . . by reason of the death of the person against whom such cause of action accrued; but . . . such cause of action shall survive . . . against the person . . . and his legal representatives. . . ." State v. Hollenbeck, *supra* at 83, n.1.

clerk filing the first notice of dismissal, counsel for appellant responded within ten days, and the court granted counsel Luna an extension of time until February 28, 1974, within which to file a statement of readiness. Mr. Luna failed to file a statement of readiness within the specified time, but no objections were raised until appellees moved for an order directing the clerk to issue a second notice of dismissal, about a year later. After a hearing on the motion, the court again granted appellant an extension of time until the end of May, 1975, to file a statement of readiness. Appellant attempted to comply with this order by filing a statement of readiness in the form required by Rule 12(f) on May 30, 1975. Despite the court's acceptance of Mr. Luna's reasons for the inordinate delay in filing of the statement of readiness, and granted him two extensions, the court refused to accept the statement of readiness on the basis that counsel had neglected to make a proper substitution of parties prior to May 30, 1975. Counsel for appellant attempted to do so on July 1, 1975, one month after the statement was filed.

Although we can understand the trial court's lack of patience with the slow progress of this case, we do not find anything in the record which indicates that counsel for appellant deliberately delayed the prosecution of the case or acted in a manner which we would consider "contumacious conduct." Nor do we find evidence of actual prejudice suffered by appellees in this case. All parties had ample opportunity to participate in discovery proceedings and to take depositions of potential witnesses. We are cognizant of the detrimental effect which the passage of time has on preserving evidence and on maintaining communication with potential witnesses who may have left the jurisdiction. We note that appellees filed no objections to the motion to extend the time filed by appellant on September 7, 1973, and presumably, would have been prepared to proceed with trial soon after February 28, 1974. There is nothing on the record to show that since 1974, circumstances have changed which have impaired appellee's ability to adequately present their defense. The substantial prejudice caused by a delay in service of process as in the cases of *Anderson v. Air West, Inc., supra,* and *Pearson v.*

*Dennison, supra,* is not present here. We do not find that the appellant was in any way responsible for the delay such as was found in the case of *California Molasses Company v. C. Brewer & Company,* 479 F.2d 60 (9th Cir. 1973).[7] In our opinion, the delay occasioned by Mr. Luna's search of heirs and the delay in having Beatrice Bedoya named as legal representative to authorize the continued prosecution of the case was wholly unnecessary. We do not condone Mr. Luna's failure to overcome the problems resulting from appellant's death in a more expeditious manner. However, we are persuaded, after taking into consideration all the aforementioned factors, in weighing the policies of having cases decided on their merits with that of the court's power to prevent delays, that in balancing the equities involved, the trial court erred in dismissing the complaint. To a certain extent, both the trial court and appellees contributed to the delay; the court by not filing a notice of dismissal soon after one year of the filing of the complaint, and subsequently, after the February 28, 1974 deadline had lapsed; and appellees for failing to move for a substitution of parties soon after notice of appellant's death was received, to raise objections to the further prosecution of the case by appellant's counsel, and to raise the issue of timeliness of substitution of parties soon after the lapse of the 180 days provided in Rule 25(a)(1), which appellees claim began to run from September 7, 1973.

II. WHETHER THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S COMPLAINT ON THE GROUND THAT APPELLANT'S MOTION FOR SUBSTITUTION OF PARTIES UNDER RULE 25(a)(1), H.R.C.P., WAS UNTIMELY.

The trial court denied appellant's motion for substitution of parties on the basis that: (1) the affidavit filed by counsel Luna on September 7, 1973, constituted a proper suggestion

---

[7] In that case, the court found that two years had elapsed since plaintiff filed a complaint and little or no progress had been made. The district court ordered plaintiff to show cause why the case should not be dismissed, and following a hearing, gave plaintiff 90 days within which to complete discovery proceeding. Plaintiff spent half of the 90 days looking for new counsel, and the court dismissed the case for lack of prosecution under Rule 41(b) after the expiration of the 90 days.

of death upon the record; and (2) that since the motion for substitution had not been made within 180 days following the suggestion of death upon the record, appellant's motion was untimely. The court found "inexcusable delay and lack of prosecution of the claim."

Under Rule 25(a)(1), F.R.C.P.,[8] a suggestion of death upon the record is not a pre-requisite to a filing of a motion for substitution of parties. 3B Moore's Federal Practice, ¶ 25.01 [15], Advisory Committee's Note of 1963 to Subdivision (a). There is no time limit placed on the making of a motion for substitution until the death of the party has been suggested upon the record by service of a statement of the fact of death upon the other parties to the action and upon interested non-parties. *United States v. Miller Brothers Construction Company*, 505 F.2d 1031 (10th Cir. 1974); 3B Moore's Federal Practice, ¶ 25.06 [3]. However, once the fact of death has been suggested upon the record, by any party or by the representative of the deceased party, Rule 25(a)(1), F.R.C.P., provides that the motion for substitution is to be made within 90 days thereafter.

The 90-day time period is subject to extension under Rule 6(b), F.R.C.P., at the discretion of the trial court.[9] *Roscoe v. Roscoe*, 379 F.2d 94 (D.C. Cir. 1967); *Edmondson v. State of Nebraska*, 383 F.2d 123 (8th Cir. 1967); *Staggers v. Otto Gerdau Company, Inc.*, 359 F.2d 292 (2d Cir. 1966); *Graham v.*

---

[8] Rule 25(a)(1), H.R.C.P., is identical to the Federal Rule 25(a)(1), except that the Hawaii rule permits 180 days within which to file a motion for substitution rather than 90 days.

[9] Rule 6(b), F.R.C.P., provides:

(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b) 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them.

Rule 6(b), H.R.C.P., is identically worded to the federal rule with the exception that the Hawaii rule includes Rule 73(a) and (g) among the exceptions to the permissive enlargement of time provision in subsection (2).

*Pennsylvania Railroad*, 342 F.2d 914 (D.C. Cir. 1964); *Vandervelde v. Put and Call Brokers and Dealers Association*, 43 F.R.D. 14 (S.D.N.Y. 1967); 2 Moore's Federal Practice, ¶ 6.01 [20]. Courts generally have given Rule 6(b) a liberal interpretation, consistent with the liberal interpretation standard in Rule 1, F.R.C.P., *Vandervelde v. Put and Call Brokers and Dealers Association, supra;* and in order to work substantial justice, *Roscoe v. Roscoe, supra; Yonofsky v. Wernick*, 362 F.Supp. 1005 (S.D.N.Y. 1973). *But cf. Graham v. Pennsylvania Railroad, supra*. Ordinarily, the discretion of the court should be exercised to permit an extension of time, in the absence of a showing of bad faith on the part of the movant for substitution or undue prejudice to the other parties to the action. *United States v. Miller Brothers Construction Co., supra; Staggers v. Otto Gerdau Company, Inc., supra; Roscoe v. Roscoe, supra*. The burden is on the movant to demonstrate good faith and to show some reasonable basis for noncompliance with the rules. *Yonofsky v. Wernick, supra* at 1012.

In this jurisdiction, we have said: "The Rules of Civil Procedure are to be liberally construed to promote justice," and the court may depart from the literal application of the rule where such action is necessary to prevent the miscarriage of justice. *Struzik v. City and County of Honolulu*, 50 Haw. 241, 246, 437 P.2d 880, 884 (1968), applying Rule 51(e), H.R.C.P. In *Trask v. Tam See*, 42 Haw. 324 (1958), the court held that the failure of the appellant to comply with the 40-day time period for filing the record on appeal was excusable where there was no showing that the delay was a result of "dilatory tactics" on the part of counsel for appellant. In *Hawaiian Trust Co., Ltd. v. Welsh*, 33 Haw. 636 (1935), the court held that appellant's failure to file notice of an appeal within the required 20 days was excusable neglect where appellant was filing pro se and there was evidence of good faith.

In the instant case, counsel for appellant claims that the delay in substitution of the appellant's administratrix was caused by the need to validate the claims of heirs and poten-

tial claimants to the estate of appellant, and until this was done, counsel had no authority from a "bona fide representative of the deceased" to proceed with the case. As we have already stated, in light of the will provisions naming Beatrice Bedoya as executrix, we find that counsel's actions were unnecessary to the proper prosecution of the case. However, we find no evidence on the record that counsel for appellant did not in fact attempt to locate potential heirs in the Philippines. The record indicates that a person purporting to be the daughter of the appellant was contacted in the Philippines in 1972, and some time thereafter, she arrived in Hawaii from the Philippines to facilitate prosecution of the case. Hence, we do not find evidence of "dilatory tactics" or bad faith.

Appellees claim that they have suffered prejudice because of the long delay in substitution of parties. We note that at all time prior to 1975, appellees proceeded with the prosecution of the case as if the proper parties were before the court. Although appellees could have complained of the delay and requested a dismissal under Rule 25(a)(1), they did not do so until after appellant filed the motion for substitution in July, 1975. If the September 7, 1973, affidavit did constitute a proper suggestion of death on the record, appellant had until March 7, 1974, to move for substitution. Within that time, appellees could also have moved for a substitution in order to expedite matters. Appellees did not do so and appellant did not move until a year and three months later. Appellees must be said to have acquiesced in the delay.

We find no evidence of actual prejudice.

We note that Rule 25(a)(1), H.R.C.P., does not specify a time within which a party's death must be suggested on the record or the court given notice thereof. The survival statute is silent as to whether an action must be revived within a specified time period in order to prevent a defeat of that right. In our opinion, however, substitution of a party should be made within a "reasonable time" after the death of a party. *Ransom v. Brennan*, 437 F.2d 513 (5th Cir. 1971). In the case of *Morse v. Deschaine*, 13 Mich. App. 101, 105-06, 163 N.W.2d 693, 696-96 (1968), the court said: "The 'reasonable time' is

determined by whether the delay in substitution has (or would) materially prejudice the substantial rights of any party.'' Courts have refused to permit a substitution of parties made four years after a 12 month period alloted by statute to immunize a legal representative from suit, was unreasonable, *Fuller v. Booth, supra;* six years after the widow of a deceased plaintiff in a personal injury action was appointed as administratrix of the estate, *Dorney v. Reddy,* 45 A.D.2d 754, 357 N.Y.S.2d 21 (1974); and seven years after the defendant's death, *Rogerson v. Leggett,* 145 N.C. 7, 58 S.E. 596 (1907). In *Sawyer v. Cowell,* 241 N.C. 681, 86 S.E.2d 431 (1955), the court found no abuse of discretion when the trial court denied a motion for substitution when the plaintiff made no effort to substitute the administrator as a party-defendant until two years after the estate had been administered, accounts filed, and administrator discharged, and seven years after the defendant's death.

In the absence of a showing of undue prejudice to appellees in the two years and eight months time lapse between appellant's death and the motion for substitution, and in light of the fact that counsel for appellant did not abandon the case but continued with pretrial proceedings while attempting to locate "heirs" in the Philippines, we find that the trial court abused its discretion in not permitting appellant to substitute appellant's administratrix in the case.

Reversed and remanded for further proceedings consistent with this opinion.

*B. Martin Luna and Antonio Ramil* for plaintiff-appellant.

*William C. McCorriston (Goodsill, Anderson & Quinn* of counsel) for defendants-appellees Lahaina Restoration Foundation and State of Hawaii.

*David Nakamura,* Deputy Corporation Counsel *(Ernest K. C. Ching,* Deputy County Attorney, on the brief) for defendant-appellee County of Maui.